UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

GINGER MASOUD, on behalf of herself and all others
similarly situated,

        Plaintiff,

v.

1285 BAKERY INC. d/b/a PULSE RESTAURANT, and
NICHOLAS CASTIGLIANO,

        Defendants.

_____ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _____

No. 15 Civ. 7414 (CM)

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND CONDITIONAL COLLECTIVE CERTIFICATION

Plaintiff Ginger Masoud ("Plaintiff") commenced this putative class and collective action

on September 18, 2015, claiming that Defendants 1285 Bakery Inc. and Nicholas Castigliano

(collectively, "Defendants") violated provisions of the New York Labor Law ("NYLL") and the

Fair Labor Standards Act ("FLSA"). Plaintiff now moves for class certification on the NYLL

claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and conditional collective

certification on the FLSA claim, pursuant to 29 U.S.C. § 216(b). For the reasons set forth below,

Plaintiff's motion is granted.

## BACKGROUND

### I.   The Parties

Plaintiff worked at Pulse Restaurant as a banquet server for over two years, roughly from

September 2012 to December 2014. (Masoud Decl. ¶ 2, Dkt. No. 19.) As a banquet server, she

worked at private events at Pulse. (*Id.* ¶ 3.)

The proposed members of the NYLL class ("Class Members") are individuals who

worked as banquet servers at Pulse from September 18, 2009, onward. The proposed members

1

of the FLSA collective ("Collective Members") are individuals who worked as banquet servers from September 18, 2012, onward.

Defendant 1285 Bakery Inc. operates Pulse Restaurant. (Buzzard Decl., Ex. B. (Castigliano Dep.) at 9.) Defendant Nicholas Castigliano is a minority owner of 1285 Bakery Inc., and is responsible for payroll and recordkeeping at Pulse. (Buzzard Decl., Ex. B. (Castigliano Dep.) at 9, 13.)

## II.    Procedural History

Plaintiff filed a Complaint on September 18, 2015, on behalf of all individuals employed by Pulse Restaurant as banquet servers from September 18, 2009, onward. Plaintiff alleges that Defendants violated the FLSA and the NYLL by failing to pay banquet servers overtime wages when their workweeks exceeded 40 hours. Plaintiff also alleges that Defendants violated the NYLL by: (1) illegally retaining banquet servers' tips; (2) failing to pay banquet servers a spread-of-hours premium; and (3) failing to give banquet servers adequate wage statements and notices.

Plaintiff filed this motion seeking class certification on the NYLL claims and conditional collective certification on the FLSA claim. (Dkt. No. 16.) Defendants failed to file any opposition to the motion.

## III.    Defendant's Allegedly Illegal Activities

### 1.  Overtime Compensation

Under both the FLSA and New York law, employers must pay certain employees 1.5 times the employees' regular rate of pay for time worked in excess of 40 hours a week. *See* 29 U.S.C. § 211(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 146–1.4. Furthermore, both the FLSA and New York law require employers to keep accurate records of how many hours

2

employees work each week. *See* 29 U.S.C. § 211(c); N.Y. Comp. Codes R. & Regs. tit. 12,
§ 146–2.1(a).

Plaintiff alleges that she occasionally worked more than 40 hours a week but never
received overtime pay. She also claims that Defendants are unable to deny this because they
failed to keep accurate records of the number of hours worked by banquet servers. Allan Klein,
Pulse's event manager, testified that banquet servers were required to sign in and out, *personally*,
when they began and finished work. However, he appeared to admit that the requirement was
not strictly enforced.

Q: For the servers that would work at events, is [there] any form of clock-in or clock-out
or sign-in sheets?

A: There's sign-in sheets.

Q: Are servers required to sign in?

A: Yes.
Q: Every time they start an event?

A: Yes.

Q: Are they required to sign out?

A: Richard signs them out. Sometimes they sign themselves out. But I know if Richard
signs it out everyone is gone.

Q: So it is not a requirement that day?

A: It is a requirement. It is not done because it is after a party. People are tired. They have
been there for six and a half hours, seven hours the most, two hour break.

(Buzzard Decl., Ex. C (Klein Dep.) at 68-69, Dkt. No. 18.)

Plaintiff also alleges that Defendants' payroll records – incomplete as they are – contain
evidence of overtime violations. In support, she cites a paycheck dated December 28, 2012,
which includes work she performed during the two-week period between December 10 and

3

December 23. The check reflects that Plaintiff worked a total of 80 hours in those two weeks. Defendants' records indicate that Plaintiff worked six private events in that period, four in the first week and two in the second. Thus, for Plaintiff not to have worked more than 40 hours in the first week, the two events in the second week must have lasted 20 hours each. Plaintiff claims that this is impossible because private events are contractually precluded from continuing past 2:00 a.m. Unlikely as it is that two events in one week each lasted 20 hours, nothing in the event contract says that events cannot run past 2:00 a.m.; it only states that music played in conjunction with events must end no later than 2:00 a.m. (*See* Buzzard Decl. Ex. E at 1, Dkt. No. 18.)

## 2. Illegal Retention of Banquet Servers' Tips

The NYLL prohibits employers from retaining any part of an employee's gratuity or any charge purported to be a gratuity. N.Y.L.L. § 196–d. The New York State Department of Labor has promulgated regulations providing that: (1) any charge purported to be a gratuity must be distributed, in full, to the employees who provided the service; (2) there is a rebuttable presumption that a charge is a gratuity when it is not for food or drinks, including when it is for "service;" and (3) employers are required to keep records related to such charges. N.Y. Comp. Codes & Regs. tit. 12, § 146–2.18. A service charge is "purported to be a gratuity" if a reasonable person would think it is a substitute for a gratuity. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 330 (S.D.N.Y. 2010) (citing *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70, 79 (2008)).

Pulse assesses a service charge for private events. The standard private event contract states that a "20% service charge . . . will be added to the food and beverage total of the bill." (Buzzard Decl. Ex. E (Sample Contract) at 1, Dkt. No. 18.) The contract does not use the term

4

"gratuity." According to Mr. Klein, when customers asked him about tipping the banquet servers, he responded that the bill included the tip. (*See* Buzzard Decl. Ex. C (Klein Dep.) at 49, Dkt. No. 18.) Plaintiff claims that the service charge is a purported gratuity, and that she and other banquet servers were entitled to receive its proceeds in full. She alleges that Defendants illegally retained the service charge by failing to distribute it to her and the other banquet servers in full.

Defendants have not produced records of how the service charge was distributed. Plaintiff's earnings record shows that she earned an hourly wage and various other amounts identified as "bonus," "salary," and "charged tip." (*See* Buzzard Decl., Ex. H (Masoud Earnings Record), Dkt. No. 18.) Castigliano claims that these amounts represent the share of the service charge Plaintiff received. (*See* Buzzard Decl., Ex. B (Castigliano Dep.) at 47, 53, 55, Dkt. No. 18.) Plaintiff retorts that the nature of the amounts suggests otherwise. Specifically, because the amounts mostly are evenly divisible by $25, Plaintiff argues that they do not indicate an even distribution of varying service charges among a varying number of banquet servers.

Plaintiff further alleges that even if the banquet servers did receive the service charge, the way it was distributed still constitutes a violation of the NYLL, because Defendants used it to satisfy their obligation to pay the banquet servers' hourly wages. Plaintiff cites Castigliano's own testimony as evidence that Defendants used the service charge to pay the banquet servers' hourly wages.

> Q: Is your testimony that one could look at the contract, divide the service charge by the number of servers who worked at that event and give each server one full share and the captain one and a quarter share and it would equal the exact amount of the service charge?
>
> A: With their hours, you have to also include their hourly wage as well.

5

Q: Hourly wage plus their share of the service charge would equal the entire amount of the service charge?
A: As a group?

Q: Correct.

A: As a group, it should be, yeah.

(Buzzard Decl., Ex. B (Castigliano Dep.), at 86–87, Dkt. No. 18.)

### 3. The Spread-of-Hours Premium

New York law requires employers to pay certain employees an additional hour's pay when their "spread of hours" is greater than 10. N.Y. Comp. Codes R. Regs., tit. 12, § 146–1.6. "Spread of hours" is "the interval between the beginning and end of an employee's workday," and it "includes working time plus time off for meals plus intervals off duty." *Id.* Plaintiff claims that her workdays occasionally exceeded 10 hours. She testified that banquet servers were usually required to arrive at Pulse at 3:00 p.m. and sometimes worked until at least 1:30 a.m. Plaintiff claims that she never received the spread-of-hours premium.

### 4. Wage Notices and Statements

Starting April 9, 2011, Defendants were required to give each employee, "at the time of hiring," a notice written in both English and the employee's primary language stating "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ." N.Y.L.L. § 195(1)(a). Plaintiff alleges that she never received such a notice, and that the sample notices Defendants provided are deficient for their failure to inform banquet servers of their hourly pay rate or any allowances claimed as part of the minimum wage.

6

Starting April 9, 2011, Defendants were also required to give each employee a written

statement along with every payment of wages listing "allowances, if any, claimed as part of the

minimum wage." N.Y.L.L. § 195(3). Additionally, because Plaintiff and the other banquet

servers are not "exempt from overtime compensation," their wage statements had to include "the

regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours

worked, and the number of overtime hours worked." *Id.* Plaintiff alleges that Defendants'

paystubs failed to meet these requirements because they did not list the tip credit allowances that

Defendants were claiming against the minimum wage in order to pay banquet servers only $6 an

hour, which at all relevant times was less than the New York minimum wage.

## DISCUSSION

## I.   Rule 23 Class Certification

### a.  The Legal Standard

To obtain class certification under Rule 23, the class proponent must satisfy the four

express requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4)

adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Teamsters Local 445 Freight Div.*

*Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). More specifically, the

proponent must show that: "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class." Fed. R.

Civ. P. 23(a).

Besides the express requirements, "There is an implied requirement that the membership

of the class is identifiable and ascertainable." *Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006

7

WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. (In re MTBE)*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 337 (S.D.N.Y. 2004). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of N.Y.*, No. 10 Civ. 4228, 2012 WL 1450553, at *12 (S.D.N.Y. Apr. 23, 2012) (quoting *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008)). In other words, the class must be described in terms definite enough "that it is administratively feasible for the court to determine whether a particular individual is a member." *Stinson*, 2012 WL 1450553, at *12 (quotations and citations omitted).

"Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b)." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Plaintiff relies on Rule 23(b)(3), which provides that class certification is appropriate where "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The class proponent has the burden of showing by a preponderance of the evidence that the proposed class satisfies Rule 23's requirements. *Teamsters Local 445*, 546 F.3d at 202. To determine whether the burden is met, courts must consider "all of the relevant evidence admitted at the class certification stage." *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2d Cir. 2006). The class may be

8

certified only after the court has determined that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *Id.* at 42.

Plaintiff satisfies her burden and her motion to certify the NYLL class is, therefore, granted.

### b. Plaintiff Satisfies the Rule 23(a) Requirements

#### 1. The Proposed Class Is Ascertainable

Plaintiff's proposed class comprises all the banquet servers employed by Pulse on or after September 18, 2009. Defendants do not dispute that the proposed class is ascertainable. In fact, Defendants produced a document listing the banquet servers who worked at Pulse from September 18, 2009, onward. (*See* Buzzard Decl. Ex. N, Dkt. No. 18.) Class membership can definitely be ascertained by analyzing this document; and the mere fact that such analysis is necessary does not render the class unascertainable. *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("The class can be identified through an examination of the individual files of each of the participants."). Thus, the proposed class is ascertainable.

#### 2. The Proposed Class Is Sufficiently Numerous

A class comprising more than 40 members generally satisfies numerosity. *Cons. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995). Defendants do not dispute that the proposed class is sufficiently numerous. In fact, Defendants produced a list of employees who worked as banquet servers from September 18, 2009, onward, and it identifies more than 50 individuals. (*See* Buzzard Decl. Ex. N, Dkt. No. 18.) Thus, the proposed class is sufficiently numerous.

#### 3. Commonality and Typicality Are Satisfied

"As a practical matter, [commonality and typicality] tend to merge in the Second Circuit's class certification inquiry." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363,

370 (S.D.N.Y. 2007) (citing *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999)). "The commonality and typicality requirements, together, require Plaintiffs to show that they raise questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010). In wage-and-hours cases, this Court has focused on whether the employer had company-wide compensation policies that injured the potential class. *See, e.g.*, *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at \*4 (S.D.N.Y. Oct. 4, 2011) ("Plaintiffs' NYLL claims do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.") (internal citations and quotation marks omitted); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (finding that the plaintiff's claims that "Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices . . . alleged a common injury that is capable of class-wide resolution").

Plaintiff's claims arise from Defendants' alleged illegal activities: failure to comply with NYLL and FLSA overtime pay requirements; failure to distribute the entire service charge, a purported gratuity, to banquet servers; failure to pay Plaintiff a spread-of-hours premium; and failure to give Plaintiff adequate wage statements and notices. There is sufficient evidence that Defendants have, or at relevant times had compensation policies common to all banquet servers; and therefore, that the policies which allegedly adversely affected Plaintiff equally affected all the banquet servers. Defendants do not dispute this.

10

In fact, Castigliano himself testified that all banquet servers are paid through the same payroll company, Paychex, and that he is responsible for telling Paychex what to pay each banquet server. (*See* Buzzard Decl. Ex. B (Castigliano Dep.), at 9, 13, Dkt. No. 18.) And the testimony of Pulse's event manager suggests that Pulse failed to keep accurate records of how many hours each banquet server worked. Like Plaintiff, each banquet server was entitled to overtime pay for time worked in excess of 40 hours a week, and to a spread-of-hours premium if they worked more than 10 hours in a single day. Thus, the wage-and-hours issues arise from Defendants' class-wide compensation system. *See Espinoza*, 280 F.R.D. at 127 ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.").

Furthermore, if the service charge is a purported gratuity, then Plaintiff and all the other banquet servers were entitled to receive the charge's proceeds in full. Castigliano testified that the service charge was used in part to pay the banquet servers' hourly wages. If that is true, and the charge is indeed a purported gratuity, then Defendants illegally retained the banquet servers' tips. *See Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *12 (S.D.N.Y. Sept. 30, 2010) (finding that tips were illegally retained where waiters were required to remit a portion of their tips and the remitted portions were used in part to pay other employees). Thus, the gratuity issue is typical of the banquet servers and capable of common resolution. *See Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 336–337 (S.D.N.Y. 2010) (finding commonality and typicality satisfied because "each class member's claim 'arises from the same course of events,' produced by a 'single system,' namely Defendants' system for collecting, explaining, representing, and distributing the service charge").

11

Finally, Defendants were required to provide wage statements and notices to Plaintiff and the other banquet servers. Plaintiff alleges that in her case they failed to do so. As discussed above, Castigliano testified that all banquet servers are paid through the same system. Thus, the wage notice and statements issue arises from a class-wide compensation system.

All of Plaintiff's claims raise issues of common injury caused by Defendants' company-wide compensation policies and practices. Thus, Plaintiff has satisfied the requirements of commonality and typicality.

### 4. Plaintiff and Her Attorneys Are Adequate Representatives of the Proposed Class

Adequacy of representation is determined by evaluating the qualifications of the plaintiff's attorneys and the interests of the named plaintiff. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirement is met. *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 253 (2d Cir. 2011).

First, Plaintiff's attorneys at Joseph & Kirschenbaum LLP ("J&K") are qualified to represent the proposed class. They have extensive experience litigating class actions – specifically wage-and-hours disputes – and appear to know the applicable law. (*See* Buzzard Decl. ¶¶ 6–15.) Defendants do not dispute the qualifications of Plaintiff's attorneys.

Second, Plaintiff is prepared to act as a class representative and there is no indication that she has a conflict with any of the class members. (*See* Masoud Decl. ¶¶ 15–16, Dkt. No. 19.) Indeed, that Plaintiff was subject to the same compensation policies as the other banquet servers "is strong evidence that [her] interests are not antagonistic to those of the class." *Spicer*, 269 F.R.D. at 337. Furthermore, Plaintiff's sworn affidavit demonstrates that she is familiar with the

12

case's facts, including Defendants' allegedly illegal activities; and this supports a finding of adequacy. *See Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011) ("The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims."); *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 352 (E.D.N.Y. 2009) (finding adequacy, relying in part on plaintiff's "affidavit stating that she understands the responsibilities of a class representative and that she has knowledge of this action"). Defendants do not dispute that Plaintiff is able and willing to act as a representative of the proposed class.

For these reasons, Plaintiff and her attorneys are able to adequately represent the proposed class.

### c. Plaintiff Has Satisfied the Rule 23(b)(3) Requirements

#### 1. The Class Issues Predominate Over Individual Issues

Predominance requires that the proposed class be "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Thus, "when determining whether common issues predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions predominate over individual ones." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (citation omitted).

Here, common questions of liability predominate over individual ones. Defendants do not dispute this. Indeed, the issues to be litigated – whether the proposed class members: (1) were paid overtime wages; (2) received the service charge proceeds in full, in the form of gratuities; (3) were paid the spread-of-hours premium; and (4) were given adequate wage statements and notices – "are about the most perfect questions for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) Any factual variations in the number of

13

hours worked or the share of the service charge received will be relevant only for the issue of damages, if the class prevails. Thus, Plaintiff satisfies the predominance requirement.

### 2. A Class Action Is Superior to Numerous Individual Actions

"Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

Plaintiff argues that the banquet servers are unlikely to bring individual actions against Defendants because the costs of individual litigation are sure to outweigh any expected recovery. This Court has ruled that a class action is superior to individual lawsuits where the claims of individual potential class members are so small that the expectation of winning them provides little incentive to assert them. *See, e.g., Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2005 WL 106895, at *5 (S.D.N.Y. Jan. 18, 2005); *Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 83 (S.D.N.Y. 1999). That principle is apposite here. Presumably, most – if not all – of the banquet servers would be unwilling to pursue litigation individually because the game would not be worth the candle burned to play it. Thus, as Plaintiff argues, denying certification stands to deprive individual banquet servers of "any practical means for obtaining damages stemming from Defendants' illegal conduct." (Pl.'s Mem. of Law at 21.)

Furthermore, the sheer size of the potential class – over 50 members – suggests that a single class action is superior to a profusion of individual ones. The superiority requirement exists to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes &*

14

*Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).  Thus, Plaintiff is

persuasive when arguing that a class action is superior because "[c]lass certification will permit

the resolution of more than 50 individual claims in a single forum, at one time, thereby avoiding

a multiplicity of repetitive lawsuits."  (Pl.'s Mem. of Law at 21.)  Furthermore, there does not

seem to be reason to expect that class certification will create procedural unfairness or other

undesirable results.  Defendants do not seem to think so, since they mount no argument to that

effect.

      For these reasons, Plaintiff has demonstrated that a class action is the superior mechanism

for disposing of the instant case.

### d. The Court Appoints Plaintiff's Attorneys to Serve as Class Counsel

      Plaintiff proposes that her attorneys be appointed to serve as class counsel under Rule

23(g).  Defendants do not object.

      Plaintiff's attorneys have conducted discovery to identify potential class members and to

elucidate Defendants' compensation policies as they apply to banquet servers, and have deposed

Defendant Castigliano and Pulse's event manager, Allan Klein.  In a word, Plaintiff's attorneys

have diligently prosecuted this action.  In addition, the attorneys have extensive experience

litigating class actions, especially employment disputes; and a number of those cases were

resolved favorably for the parties they represented.  The previous two points imply that

Plaintiff's attorneys are familiar with the applicable law.  Finally, the attorneys appear to have

the resources and the will to adequately represent the class.  For these reasons, Plaintiff's

attorneys at J&K are appointed as class counsel.

## II.    FLSA § 216(b) Conditional Collective Certification

The FLSA provides that similarly situated employees may maintain collective actions against an employer for the employer's failure to pay overtime wages. *See* 29 U.S.C. § 216(b).

"[T]o warrant certification as a collective action under § 216(b) of the FLSA, the plaintiff must make at least 'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, No. 05 Civ. 6319, 2005 WL 3098730 at *1 (S.D.N.Y. Nov. 18, 2005) (quoting *Hoffman v. Sbarro, Inc.* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Plaintiff claims that Defendants failed to pay her overtime wages, and that the same policies that led to that failure applied equally to all other banquet servers. "Because the standard for conditional certification as an FLSA collective is less stringent than the standard for certification of a class action pursuant to Rule 23," Plaintiff's satisfaction of the Rule 23 requirements "is sufficient to demonstrate that conditional certification of the FLSA collective is also warranted." *Long v. HSBC USA Inc.*, No. 14 Civ. 6233, 2015 U.S. Dist. LEXIS 122655, at *30 (S.D.N.Y. Sept. 11, 2015); *see also Jackson v. Bloomberg L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) ("The modest factual showing standard is very low and 'considerably less stringent than the requirements for class certification under Rule 23.'"). Therefore, this collective action is conditionally certified pursuant to 29 U.S.C. § 216(b).

## III.    Other Relief

Plaintiff asks that the Court order the following relief: (1) direct Defendants to produce all known telephone numbers, e-mail addresses, social security numbers, and dates of employment of individuals who worked as banquet servers at Pulse on or after September 18, 2009; (2) order Court-facilitated notice of the NYLL and FLSA actions to Class Members and

16

Collective Members in the form provided (*See* Buzzard Decl., Ex. A, Dkt. No. 18) ("Notice");
(3) order posting of the Notice, along with FLSA consent forms, in Pulse Restaurant in a
conspicuous place where potential plaintiffs are likely to see it; and (4) order Defendants to
respond to Plaintiff's discovery requests seeking class-wide wage-and-hour documents, such as
time and payroll records, schedules, and other information. As to the discovery request, Plaintiff
also seeks an extension of the discovery period, which closed on September 23, 2016. (*See* Dkt.
No. 14.)

The Court grants all the above requests.

## CONCLUSION

The proposed 216(b) notice that was submitted for the Court's approval is APPROVED
and an order directing the rest of the aforementioned relief should be submitted by Plaintiff for
the Court's signature.

The Clerk is instructed to remove the motion at Docket No. 16 from the Court's list of
pending motions.

Dated: January 25, 2017

U.S.D.J.

BY ECF TO ALL COUNSEL

17